IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LE'MON BASS,<br><br>        Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>        Defendants. | Case No. 22-cv-01217-SPM |

## MEMORANDUM AND ORDER

### McGLYNN, District Judge:

Le'Mon Bass ("Bass") filed this action against his employer, Union Pacific Railroad Company ("UP") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Illinois Human Rights Act, 775 ILCS 5/1-103 ("IHRA") (Doc. 1). Bass alleges that he was not promoted and was discriminated against on the basis of his race (*Id.*). UP moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11). For the reasons stated below, UP's motion is **DENIED**.

### BACKGROUND

The following facts alleged by Bass are accepted as true for purposes of UP's motion[1]. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

Le'mon Bass is an African-American male (Doc. 1, ¶ 1). In May 1994, Bass began working at Southern Pacific Railroad (Doc. 1, ¶ 16). He was promoted to Locomotive Engineer in 1996 (*Id.,* ¶ 17). After Southern Pacific was acquired in November 1998,

---

[1] The factual information was taken directly from the complaint (Doc.1) and will be cited accordingly.

Bass began working for UP as a Locomotive Engineer (Doc. 1, ¶ 18). Bass currently holds that position today, 26 years later, in UP's St. Louis Service Unit (*Id.,* ¶ 19).

Beginning in May of 2004, Bass started reporting racial discrimination to UP (*Id.,* ¶ 23). In May 2004, Bass also filed a complaint with IDHR, alleging racial discrimination and retaliation for failure to promote (*Id.,* ¶ 22). In February 2019, UP removed Bass from work with "fitness for duty" claims (*Id.,* ¶ 24). Although Bass requested to return to work in June 2019 with a doctor's approval, his return was not processed, which delayed his return (*Id.,* ¶¶ 25-26).

Since 2005, Bass has applied for multiple promotional opportunities, receiving few interviews and no advancement (*Id.,* ¶¶ 34-39). In May 2014, Bass obtained his BA in general education – organizational management (*Id.,* ¶ 29). In December 2015, Bass obtained his MBA (*Id.,* ¶ 30). In July 2016, Bass obtained certifications in hazardous material management, OSHA standards, and as a first responder (*Id.,* ¶ 31). In June 2020, Bass received his PhD in business administration and management (*Id.,* ¶ 32).

## PROCEDURAL HISTORY

On June 9, 2022, Bass filed this action, alleging race discrimination and retaliation for failure to promote in violation of Title VII and the IHRA (Doc. 1). The complaint was brought in the following four counts: (1) Retaliation/denial of promotion in violation of Title VII; (2) Racial discrimination in violation of Title VII; (3) Retaliation/denial of promotion in violation of the IHRA; and, (4) Racial discrimination in violation of Title VII (*Id.*). Bass identified 43 positions for which he had applied from May 2005 to April 2022 (*Id.*, ¶ 35). He also provided information about his claim with

the IDHR and EEOC which was filed on January 29, 2021 and perfected on April 28, 2021, and for which he received his right to sue letter on March 22, 2022 (Doc. 1-1).

On August 29, 2022, UP moved to dismiss the complaint in its entirety (Doc. 11). UP argued that both the EEOC and IDHR require claims of discrimination to be filed within 300 days of the alleged act of discrimination (*Id.*). UP further contends that each failure to promote is an independent act that starts a new clock ticking so that many of the job denials, i.e. failure to promote allegations, are time-barred (*Id.*).

On September 29, 2022, Bass filed his memorandum in opposition to UP's motion to dismiss (Doc. 15). Bass pointed out that he has remained in an entry-level position for approximately 26 years, even though he has furthered his education and applied for over 40 available positions within UP (*Id.*). Bass contends that the "continuing violation" doctrine applies to his claims and that the cumulative effect of the promotion denials constitute a single unlawful employment practice (*Id.*).

## LEGAL STANDARD

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "Plausibility is not a synonym for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. These requirements ensure that the defendant receives "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.,* 589 F.3d 901 (7th Cir. 2009). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

### I. Retaliation/Denial of Promotion (Counts I and III)

Title VII prohibits an employer from discriminating against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment"). Before challenging an unlawful employment practice under Title VII, an employee must first file a timely EEOC charge. *Chaudry v. Nucor Steel-Indiana,* 546 F.3d 832 (7th Cir. 2008). Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47 (1974). Indeed, the statute expressly provides that an individual must file a charge within the statutory time period:

> "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred … except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency … such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred … ".[2] 42 U.S.C. § 2000e-5(e)(1).

UP first argues that Bass' claims of retaliation for failure to promote under both Title VII and the IDHR, Counts I and III respectively, are time-barred and limited in scope (Doc. 11).

---

[2] Because Illinois has an entity with the authority to grant or seek relief with respect to the alleged unauthorized practice, an employee who initially files a grievance with that Agency must file the charge with the EEOC within 300 days. See, *e.g., Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1121 n. 4 (7th Cir.2009) ("In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act and failure to do so renders the charge untimely.")

An "unlawful employment practice" includes various discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002); *see also Roney v. Ill. Department of Transport,* 474 F.3d 455, 460 (7th Cir. 2007). In Morgan, the Supreme Court concluded that (1) a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period of 180 or 300 days; and (2) a Title VII plaintiff alleging a hostile work environment will not be time barred so long as the claims are all part of the same unlawful practice and at least one act falls within the time limitation [180 or 300 days]. *Id.,* at 122. In other words, if a plaintiff does not file a charge concerning a discrete act of discriminatory conduct within 300 days of its occurrence, the claim is time-barred and plaintiff may not recover. *Ledbetter v. Goodyear Tire, Inc.,* 127 S.Ct. 2162, 2169 (2009); *Morgan,* 536 U.S. at 109-110; *Roney,* 474 F.3d at 460.

The *Morgan* Court also defined "discrete acts" as acts that are easy to identify, including "termination, failure to promote, denial or transfer, or refusal to hire". *Morgan*, 536 U.S. at 114; *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007) (confirming the discrete acts definition in *Morgan*.). Consequently, each failure to promote identified in the complaint is a discrete act. (Doc. 1, ¶ 35 a-qq). The question is which, if any, are actionable?

Here, Bass filed his charge of discrimination with the IDHR[3] on January 29, 2021 and perfected it on April 28, 2021 (*Id.*, ¶¶ 10-11). Accordingly, any discrete discriminatory acts that occurred more than 300 days prior to that date, or July 2, 2020,

---

[3] Said charge was dually filed with the EEOC.

are time-barred. In the complaint, Bass identified forty-three (43) positions for which he has applied and been denied a promotion since May 2005; twenty-seven (27) of which occurred before July 2020, thirteen (13) of which occurred between July 2020 and March 2021, and three (3) of which occurred after April 29, 2021. (*Id.*, ¶¶ 35a-35qq).

Bass argues that his retaliation failure-to-promote claim is based on a discriminatory promotion practice and that the cumulative effect of each denial constitutes the single, pervasive unlawful employment practice. He further asserts the "continuing violation" doctrine, which permits a plaintiff to delay filing an EEOC charge until a series of acts by an employer "blossoms into a wrongful injury on which a suit can be based." *Lewis v City of Chicago,* 528 F.3d 488, 493 (7th Cir. 2008). Despite its name though, it is a doctrine about cumulative rather than continuing violation. *Id.*

Although lower courts have applied the continuing violation doctrine to "serial violations" and held that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability, the Supreme Court has declined to extend. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 121 (2002). Instead, the Supreme Court has determined that because discrete acts, including failure to promote, are easy to identify, the discrete retaliatory or discriminatory act "occurred" on the day that it "happened." *Morgan,* 536 U.S. at 121. In other words, each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Id.* While Bass purports to have 40+ instances where he was denied promotion, this Court is bound by Supreme Court precedent. Nevertheless, Bass can articulate 13 separate discrete acts that occurred

within the appropriate time period, *i.e.* 300 days of perfecting his claim, in his claim of retaliation/failure to promote.

Because this Court has determined that only incidents that took place within the timely filing period can be actionable, it must next determine whether Bass has, in fact, stated a plausible cause of action. To prevail on his retaliation claims, Bass must prove that "(1) he engaged in an activity protected by statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis* v. *Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).

This is the pleading stage – Bass has plausibly alleged claims of retaliation. Bass contends that after he began reporting discrimination to UP, he was disciplined/retaliated against by repeatedly being passed over for promotions. To ultimately prevail, Bass must demonstrate through either direct or circumstantial evidence that there was a causal link between his protected activity and promotion denial. *Metzger v. Ill. State Police,* 519 F.3d 677, 681 (7th Cir. 2008). That is a different standard for another day.

Notwithstanding the foregoing, there is a limit to Bass' claims. As shown *infra*, the only actionable claims are those that were alleged in a timely fashion. As such, Counts I and III must be narrowly tailored to only encompass those promotions denied between July 2020 and March 21, 2021, or those that fall within 300 days of the EEOC/IDHR claim. Accordingly, all claims prior to July 2020 and after March 2021 are dismissed[4].

---

[4] Within the complaint, Bass has articulated 43 total promotion denials, which are identified as subparagraphs a-qq. (Doc. 1, ¶ 35). Plaintiff may proceed on claims bb-nn; all others are dismissed.

## II. Racial Discrimination (Counts II and IV)

Bass next asserts that he was discriminated against because of his race, African American. As stated previously, this case is at the pleading stage. "[A] plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Id.* (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ). "[A] plaintiff alleging employment discrimination on the basis of race, sex or some other factor governed by 42 U.S.C. § 2000e-2 may allege the defendant's intent quite generally: I was turned down for a job because of my race is all a complaint has to say." *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 781 (7th Cir. 2007). "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Indeed, even after *Twombly,* a complaint alleging employment discrimination "need only aver that the employer instituted adverse employment action against the plaintiff on the basis of her protected status." *Tamayo*, 526 F.3d at 1085.

Here, Bass alleges he is African-American; that he worked for UP since 1998; that he was well-qualified for multiple positions; that he has no disciplinary history, yet he has never advanced in his career due to his race (Doc. 1, ¶¶ 1, 18, 35, 27, 47). He further alleges that "all the upper management positions are filled by Caucasian individuals" (*Id.*, ¶38).

This claim is akin to "unlawful employment practice" as it refers to UP's "discriminatory practices" (Doc. 1, ¶ 49). Although Bass references the 43 times he was denied a promotion, his discrimination claim occurred over a series of days, months, and years and, in direct contrast to the discrete acts, this claim is based on the cumulative effect of the individual acts. *Morgan,* 536 U.S. at 121. A charge alleging a hostile work environment will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. *Id.* at 122.

Bass has pled enough to state a plausible cause of action and has pled enough facts "to provide the defendant with sufficient notice to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1084; *Samovsky v. Nordstrom, Inc.*, 619 F. App'x 547, 548 (7th Cir. 2015). Indeed, while only 13 discrete acts are actionable to support his retaliation/failure to promote claim, Bass can indicate that he was passed over for promotion on 41 occasions to support his claim of racial discrimination. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Again, this is the pleading stage not the proving stage. At this time and without the benefit of a fully developed evidentiary record, the Court is not tasked with determining whether Bass will prevail. While Bass' claims appear to be duplicative and predicated upon the same failure to promote, it remains to be seen if additional alleged discriminatory conduct exists and whether Bass can demonstrate causation and a *prima facie* case.

## CONCLUSION

In light of the forgoing, Bass has sufficiently pled multiple causes of action against UP and has plausibly alleged that he is entitled to relief. Because the purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits, any disputed issues may be better suited for disposition on a motion for summary judgment, after the case has been more fully developed through discovery.

Accordingly, the motion is DENIED; however, the Court grants defendant's request to dismiss unexhausted allegations. Accordingly, with respect to Counts I and III, the Court strikes Bass' specific promotion denials that occurred before July 2020 and after March 21, 2021[5], as they fall outside the applicable 300 days for the EEOC/IDHR charge of discrimination, and are therefore, not actionable.

In closing, Union Pacific Railroad Company shall answer the complaint within 21 days, or by, December 6, 2022, with the above redactions.

**IT IS SO ORDERED.**

**DATED: November 15, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**

---

[5] The Court strikes subparagraphs a-aa and oo-qq of Paragraph 35.