IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LE'MON BASS,<br><br>        **Plaintiff,**<br><br>v.<br><br>**UNION PACIFIC RAILROAD COMPANY,**<br><br>        **Defendant.** | Case No. 3:22-CV-01217-SPM |

### MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Union Pacific Railroad Company. (Doc. 42). Plaintiff Le'Mon Bass filed a Response, as well as a Statement of Additional Relevant Facts and a Notice of Filing Additional Documentation in Opposition of Defendant's Motion for Summary Judgment. (Docs. 51, 52, 53). Having been fully informed of the issues presented, this Court **GRANTS** Union Pacific's Motion for Summary Judgment.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Le'Mon Bass is a longtime employee of Union Pacific, having worked as a Locomotive Engineer since 1998. (*See* Doc. 1, ¶ 18). Bass brought the instant suit alleging that Union Pacific unlawfully discriminated and retaliated against him because of his race. (*See id.*, ¶ 40). Specifically, Bass alleges that his failure to obtain various promotions at Union Pacific as well as a purported delay in his return to work after he was diagnosed with obstructive sleep apnea were due to this discrimination

and that Union Pacific retaliated against him for reporting this discrimination. (*See id.*, ¶¶ 24–26; ¶¶ 36–40). On June 9, 2022, Bass brought four claims against Union Pacific related to his failure to promote: retaliation and discrimination under Title VII of the Civil Rights Act of 1964 (Counts I and II) and retaliation and discrimination under the Illinois Human Rights Act ("IHRA") (Counts III and IV). (*See id.*, ¶¶ 41–58). Union Pacific filed a Motion to Dismiss on August 29, 2022 (Doc. 11), which this Court denied on November 15, 2022. (Doc. 17). After the completion of discovery on March 1, 2024, Union Pacific filed the instant Motion on April 5, 2024. (Doc. 42). Plaintiff Bass responded in opposition on June 17, 2024. (Docs. 51, 52, 53).

## APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(citing Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, no issue remains for trial if "sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

The Court will address Bass's claims in the sequence utilized by Union Pacific in their Motion and supporting Brief. (*See* Docs. 42, 43).

### I. Race-Based Discrimination (Counts II and IV)

Discrimination based upon race is prohibited under both Title VII, 41 U.S.C. § 2000e, and by the IHRA, 775 ILL. COMP. STAT. 5/1-102. "To proceed to trial on a failure to promote claim, a plaintiff either must produce 'sufficient direct or circumstantial evidence that [the employer's] promotion decisions were intentionally discriminatory or make an indirect case of discrimination' under the burden-shifting method of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016) (quotin g *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014)). Using the "indirect" path[1] (i.e., if the plaintiff is unable to provide direct evidence of discrimination), the plaintiff must present a prima facie case for failure to promote "showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley*, 829 F.3d at 892 (citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). If the plaintiff is able to establish a prima facie case, the employer "must then produce evidence of 'a legitimate nondiscriminatory reason for the employment action'; if the employer produces evidence of a legitimate reason, the plaintiff must then produce evidence that the employer's 'stated reason is a pretext.'" *Id.* at 891–92 (quoting *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015)). "Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a *prima facie* case for failure to promote." *Id.* at 892 (citing *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008)).

---

[1] While Bass makes much of the Seventh Circuit's holding in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) "that district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards," (Doc. 51, p. 2 (quoting *Ortiz* at 765)), the Seventh Circuit was clear that "[t]oday's decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand. We are instead concerned about the proposition that evidence must be sorted into different piles, labeled 'direct' and 'indirect,' that are evaluated differently." *Id.* at 766 (citing 411 U.S. 792). Thus, *Ortiz* does not alter the Court's analysis pursuant to *McDonnell Douglas* here.

In Counts II and IV of his Complaint, Bass alleges that Union Pacific discriminated against him via failure to promote him because he is Black, even though he alleges he was the most qualified candidate. (*See* Doc. 1, ¶¶ 47, 57). Bass stated in his Complaint that he was rejected from a large number of jobs with Union Pacific even though he was told he "was the only one in transportation who has a doctoral degree." (*Id.*, ¶¶ 32–33; *see id.*, ¶ 35bb–nn[2]).

In their Brief, Union Pacific concedes that Bass can prove two of the required elements: "Union Pacific does not dispute that Bass can satisfy the first and third elements of his prima facie case because he belongs to a protected class by virtue of his race (African-American) and Union Pacific did not select him for any of the remaining positions at issue in his Complaint." (Doc. 43, p. 18 (citing *id.*, ¶¶ 31–71)). However, they argue that Bass "cannot demonstrate he was qualified for the positions he applied for and that an equal or less qualified person outside of his protected class was selected for positions instead." (*Id.*, pp. 18–19). Union Pacific elaborates, stating that:

> Bass was automatically eliminated from 2 positions because he failed to meet minimum position requirements; 3 positions were awarded to more qualified diverse applicants; 1 position was first offered to a more qualified African-American applicant who declined the position and then offered to a more qualified non-diverse applicant; and 1 position

---

[2] The Court struck subparagraphs 35a–aa and oo–qq of Bass's Complaint because they fell outside of the 300-day limit established by the Supreme Court for Title VII plaintiffs who file a complaint with the United States Equal Employment Opportunity Commission ("EEOC") or the Illinois Department of Human Rights ("IDHR"). (*See* Doc. 17, p. 6 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10, 114 (2002); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007); *Ledbetter v. Goodyear Tire, Inc.*, 127 S. Ct. 2162, 2169 (2009))). While Bass states in his Deposition and emphasizes in his response to the instant Motion that he applied "for more than 100 managerial positions with the Defendant" and that he was told that he was qualified for 90% of those 100 jobs, only the 13 jobs for which he applied between July 2020 through March 2021 fit within the 300-day limit here. (Doc. 51, p. 1 (citing Bass. Dep. 89)); *see* Bass Dep. 88:16–91:1.

> was closed. The non-diverse applicants selected for the remaining positions were all more qualified than Bass because they possessed recent and relevant experience for the position that Bass did not—with a majority having years of relevant management experience within Union Pacific.

(*Id.*, p. 23). They argue that Bass's own assessments of his qualification are immaterial because "failure to promote requires a showing that the employee who was promoted was not a member of the protected class *and was not better qualified*." (*Id.*, p. 24 (citing *Houzenga v. City of Moline*, No. 12-4072, 2014 WL 2462563, at *2 (C.D. Ill. June 2, 2014))).

Bass responds that only one African-American employee obtained a managerial position and that white employees were promoted in eleven of the thirteen[3] positions referenced by Union Pacific. (*See* Doc. 52, p. 3 (citing Doc. 43, ¶¶ 31–71)). He states that this is pattern evidence of discrimination in line with *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772 (7th Cir. 2007). (*See* Doc. 51, p. 3 (citing the same)). He also argues that "experienced and educated minority employees" have been passed over in favor of "inexperienced, non-educated white employees" and that he has reported racial discrimination twenty-nine times. (*See id.*; *see also* Bass Dep.). Bass relies on his answers to Union Pacific's interrogatories and on his Deposition for this information. (*See* Doc. 52, p. 1).

---

[3] While Bass claims that Union Pacific discussed fifteen positions, in fact, only thirteen are available for consideration by the Court. *See supra* note 2. Moreover, Bass claims that eleven white employees obtained the promotions Bass sought. (Doc. 51, p. 3). In fact, nine positions went to white employees, one went to a Black employee, one to a Hispanic employee, and one to an employee representing two or more races; one position was closed without a selected applicant. (*See* Doc. 43, pp. 19–23). Moreover, one of the nine positions that went to a white employee was originally offered to a Black applicant, who turned it down. (*See* Doc. 43, p. 21).

The crux of Bass's argument regarding his qualification for the various promotions he has pursued is that he is the only train engineer with a doctorate employed by Union Pacific—he notes in his Complaint that he received a PhD in business administration and management in 2020; his Deposition clarifies that it was from California InterContinental University. (*See* Doc. 1, ¶¶ 32–33; *See* Bass Dep. 226–29). Recall that under the *McDonnell Douglas* burden-shifting framework, Bass must prove both that he was qualified for the positions he sought and that Union Pacific "selected someone outside the protected class who was similarly or less qualified." *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 646 (7th Cir. 2023) (citing *Logan v. City of Chicago*, 4 F.4th 529, 536–37 (7th Cir. 2021)); *see McDonnell Douglas*, 411 U.S. at 668. However, the Seventh Circuit "'has . . . never held that a job interview must be scored according to some sort of objective criteria' to avoid triggering Title VII liability" and has stated that "nothing in Title VII bans outright the use of subjective evaluation criteria." *Barnes-Staples v. Carnahan*, 88 F.4th 712, 717 (7th Cir. 2023) (first quoting *Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005); then quoting *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1170 (7th Cir. 1998)). The question is whether "a reasonable jury [could] find based on all available evidence that a discriminatory . . . motive caused" Union Pacific to select a different candidate instead of Bass. *Id.* at 716 (quoting *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017)).

Union Pacific provides hiring data that shows that Bass was not the most competitive candidate for *any* of the positions at issue in this action. (*See* Doc. 43, pp.

19–23; *see also id.*, ¶¶ 31–71). For the positions listed in ¶¶ 35bb–cc; 35ee–gg; 35ii; 35kk–nn of Bass's Complaint (Doc. 1), Bass was assessed as not being competitive with the best candidate. (*See* Doc. 43, pp. 19–23). Bass was eliminated from consideration of the position listed in ¶ 35dd for being below the minimum position requirements and from the position listed in ¶ 35hh for lacking the specific certification required. (*See* Doc. 1, ¶¶ 35dd; 35hh; Doc. 43, pp. 19–23). The opening for the position described in ¶ 35jj was closed without a selected candidate. (*See* Doc. 1, ¶ 35jj; Doc. 43, pp. 19–23).

Even if Bass were able to present a prima facie case of discrimination, Union Pacific argues that it "'has established by uncontested facts the nondiscriminatory, legitimate reason for' hiring applicants other than Bass who were 'more experienced and better qualified.'" (Doc. 43, p. 24 (quoting *Summers v. Allis Chalmers*, 568 F. Supp. 33, 37 (N.D. Ill. 1983)). Notably, Union Pacific offers Field Management Training ("FMT") and Operations Management Training ("OMT") programs designed to place interested Union Pacific employees into management roles. (*See id.*, ¶¶ 12–14). As Union Pacific states, "Bass has not completed the FMT or OMT training programs and has never held a management position within Union Pacific." (*Id.*, ¶15). They argue that "each of the selected applicants at issue have more relevant and recent experience than Bass—who has no management experience within Union Pacific and has refused to undergo the Field Management Training ("FMT") program that funnels into entry-level management positions in Union Pacific's transportation department." (Doc. 43, p. 25). They also argue that "Union Pacific invited him to

interview for a Representative Risk Management position in Kansas City, Missouri in January 2022 and offered him placement in its FMT program in December 2022—both of which Bass declined." (Doc. 43, p. 25 (citing *id.* ¶¶ 85–92)). Bass does not refute or even discuss these offers in his Response. (*See* Docs. 51, 52, 53).

The Seventh Circuit analyzed Title VII discrimination and retaliation claims in *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635 (7th Cir. 2023). In affirming the district court's grant of summary judgment in favor of the employer, the Seventh Circuit stated that "there is no doubt that the chosen candidate had more directly relevant credentials and experience in finance than [the plaintiff] did." *Id.* at 647. Key to the analysis in *Kinney* was that the chosen candidate had more directly relevant experience, even though the plaintiff "held her master's degree for longer and had more leadership experience." *Id.*

Unlike in *Kinney* where the district court determined that the plaintiff "appeared to be qualified for the position," 76 F.4th at 647, Bass was not competitive with the hired candidate in *any* of the twelve relevant positions to which he applied and was not selected in favor of another candidate. (*See* Doc. 43, ¶¶ 31–71; *see also id.*, pp. 19–23). Additionally, the only relevant position for which Bass interviewed (the Manager II – EEO position referenced in Doc. 1, ¶¶ 35ii) was first offered to a Black candidate who turned it down. (*See* Doc. 43, p. 21). While it may be true that Bass is the only train engineer with a PhD at Union Pacific, that academic credential (while impressive) does not automatically confer him with the management, human resources, or quality control experience required by the various job postings at issue.

*See Kinney* at 647. Even if it did, Bass's credentials do not rank him equally with the top applicants for the various jobs to which he applied. Therefore, Bass has failed to allege that he was at least as qualified as any of the individuals who were offered the promotions Bass sought, thus failing to meet the second and fourth requirements to allege a prima facie case of indirect discrimination. *See Riley*, 829 F.3d at (citing *Jaburek*, 813 F.3d at 631). Moreover, even if he were able to allege a prima facie case, Union Pacific has demonstrated that it had valid, nondiscriminatory reasons for selecting the chosen candidates. Bass has not provided any evidence that these reasons were pretextual. *See Riley* at 891–92 (quoting *Simpson*, 780 F.3d at 790).

Separately from his discrimination claims as related to his failure to promote, he also alleges that Union Pacific discriminated against him for failing to promptly approve him to return to work following a medical leave of absence. (*See* Doc. 1, ¶¶ 24–26). Union Pacific argues that it was Bass who asked for a medical leave following a diagnosis of obstructive sleep apnea following a fit-for-duty evaluation "in compliance with Union Pacific's Medical Rules after Bass self-reported he could not safely perform his job duties that day." (Doc. 43, p. 26 (citing *id.*, ¶¶ 16–18)). Union Pacific argues that any delay resulted from Bass's delay in submitting medical records showing that his obstructive sleep apnea was being fully treated, enabling him to return to work. (*See id.*, p. 26 (citing *id.*, ¶¶ 22–30)). Bass does not address these claims in his Response. (*See* Docs. 51, 52, 53). Therefore, Bass's claims about discrimination as related to a delay in his return to work after a medical leave fail as

he has failed to provide any evidence that there is a genuine dispute as to any material fact regarding this claim.

In conclusion, Bass has failed to allege a prima facie case of discrimination in line with Seventh Circuit precedent and the Court holds that a reasonable jury could not find that Bass was qualified for the positions he sought as he did not have any of the prerequisite qualifications. Moreover, Bass's claims regarding the delay in his return to work also fail. Therefore, because there are no issues of material fact relating to Counts II and IV of his Complaint (Doc. 1), they do not survive Union Pacific's Motion for Summary Judgment (Doc. 42).

## II. Race-Based Retaliation (Counts I and III)

"In order to make out a claim for retaliation, a plaintiff must demonstrate (1) that he engaged in statutorily protected activity; (2) that his employer took a materially adverse action against him; and (3) that the protected activity and the adverse action are causally connected." *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) (footnote omitted) (citing *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016); *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881 (7th Cir. 2014); 42 U.S.C. § 2000e-3(a)); *see* 775 ILL. COMP. STAT. 5/6–101. In order to demonstrate causation, "the plaintiff must show that 'the desire to retaliate was the but-for cause of the challenged employment action.'" *Id.* (quoting *Gracia*, 842 F.3d at 1019)). Such a showing "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

Bass claims that Union Pacific retaliated against him "by failing to promote him for pretextual reasons after Plaintiff complained about racial discrimination." (Doc. 1, ¶ 42). He states that he reported discrimination in 2004 via a formal complaint process and subsequently reported discrimination via informal channels "approximately twenty-nine (29) times"[4] between 2004 and 2023. (*See* Doc. 53, Ex. A, Answer to Interrog. 17). He alleges that his failure to promote was retaliation on the part of Union Pacific in response to his reports of racial discrimination. (*See id.*, p. 1).

Union Pacific argues that because Plaintiff Bass cannot provide evidence that his reports of retaliation were a but-for cause of his failure to promote, his claims fail as a matter of law. (*See* Doc. 43, p. 28). Recall that Bass filed a complaint with the IDHR in 2004 alleging discrimination. (*See* Doc. 1, ¶¶ 22–23). Union Pacific argues that "Bass has offered no evidence to support this conclusion beyond his own personal belief, and the Seventh Circuit has made clear the time between his 2004 charge and rejected management applications from July 2020 through March 2021 'standing alone, is too long' to raise an inference of retaliation." (*Id.*, p. 29 (citing *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000))). They also argue that "Bass's purported 'oral' complaints of discrimination made between 2004 and 2018 are too attenuated to create an inference of retaliation with respect to his rejected management applications between July 2020 and March 2021." (*Id.*, p. 30 (citing *id.*, ¶ 75; *Richards v. Wilkie*, No. 18 C 354, 2020 WL 5763665, at *14 (N.D. Ill. Sep. 27, 2020))).

---

[4] The Court notes that Bass states that he made "oral" complaints some thirty-two (32) times in Answer to Defendant's Interrogatory 17.

Union Pacific also argues that "Bass has presented no evidence that these purported complaints to Pat Lester, Chris Hueter, or Rob Hoskin were ever 'communicated . . . to anyone involved in the promotional process' for the positions at issue in his Complaint" with the exception of Debrah Schrampfer, who was the hiring manager for the position that went to an applicant of two or more races. (*Id.*, p. 30; n.5). Union Pacific argues that "[b]ecause Bass presents no evidence to suggest a 'causal connection' between his alleged oral complaints and his rejected applications at issue, they cannot support his retaliation claims under Title VII or the IHRA." (*Id.*, p. 30). Also, Union Pacific argues that Bass's April 23, 2021 charge of discrimination against Union Pacific and June 21, 2021 complaint filed with Union Pacific's own Equal Employment Opportunity department "both occur after he was eliminated from the management positions at issue in his complaint, neither can serve as a 'protected activity' for purposes of his retaliation claims in this case." (*Id.*, p. 31). Finally, Union Pacific also argues that Bass is not entitled to punitive damages because "Bass has presented no facts to suggest that Union Pacific intentionally discriminated against him—let alone that it did so with malice or reckless disregard to his rights" in accordance with *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999). (*See* Doc. 43, pp. 31–33 (citing the same)).

In his Response (Docs. 51, 52, 53), Bass relies on his Complaint, discovery responses, and his Deposition in arguing that he reported discrimination twenty-nine (29) times.[5] (*See* Doc. 52; Doc. 53, Ex. A, Answer to Interrog. 17).

---

[5] *See supra* note 4.

The Seventh Circuit has stated that "[a]lthough suspicious timing alone is rarely enough to create an inference of retaliatory motive, it can sometimes raise an inference of a causal connection, especially in combination with other evidence." *Gracia*, 842 F.3d at 1021 (citing *Magyar v. St. Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). The Seventh Circuit also states that they "have rejected any bright-line rule about how close the events must be to establish causation, but in cases where there is 'corroborating evidence of retaliatory motive,' an 'interval of a few weeks or even months may provide probative evidence of the required causal nexus.'" *Id.* (quoting *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015)).

Here, the interval between the initial complaint in 2004 and the July 2020 to March 2021 job applications at issue is over 16 years, far beyond "a few weeks or even months." *Id.* (quoting *Castro* at 565). Even considering Bass's purported "oral" complaints, he has provided no evidence that those to whom Bass directed his complaints informed the hiring managers for the July 2020 to March 2021 job positions from which Bass was rejected with the exception of Debrah Schrampfer, who was the hiring manager for the position that went to an applicant of two or more races. (*Id.*, p. 30; n.5). Regarding his oral complaint to Ms. Schrampfer, Bass does not indicate whether his complaint was made before or after his rejection for the position in question. (*See* Doc. 53, Ex. A, Answer to Interrog. 17). Even so, Bass cannot escape the fact that those hired had more directly relevant qualifications for the jobs in question, even with his doctoral degree. Additionally, because causation requires the

first event to precede the second, Bass's second discrimination complaint in April 2021 and his report to the Union Pacific EEO office in June 2021 (which both occurred *after* his rejections from July 2020 to March 2021) cannot be causally linked to his protected activities that occurred before those complaints were lodged. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity." (quoting *Durkin v. City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003))). Therefore, Bass's retaliation claims under Title VII and the IHRA both fail to survive Union Pacific's Motion for Summary Judgment (Doc. 42).

Regarding Bass's claim for punitive damages, Supreme Court precedent requires him to show (1) that Union Pacific acted with malice or reckless indifference to Bass's rights under federal law and (2) that there is a basis under agency law to impute liability. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013) (quoting *Kolstad*, 527 U.S. at 533–46)); *see Kolstad* at 533–46. Additionally, "when a plaintiff imputes liability to the employer through an agent working in a 'managerial capacity . . . in the scope of employment,' the employer has the opportunity to avoid liability for punitive damages by showing that it engaged in good-faith efforts to implement an anti-discrimination policy." *AutoZone*, 707 F.3d at 835 (quoting *Kolstad* at 544–46)); *see Kolstad* at 533–46. With this standard in mind, Bass has not met the first element because he has not provided sufficient evidence to show via a preponderance of the evidence "that the employer acted with 'malice' or 'reckless indifference' toward

the employee's rights under federal law." *AutoZone* at 835 (quoting *Kolstad* at 533–39). Therefore, his claim for punitive damages also fails.

While the Court has empathy for Plaintiff Bass's frustration with his inability to promote at Union Pacific, he has not met his burden under relevant case law to demonstrate that there is still a genuine dispute of material fact in accordance with Federal Rule of Civil Procedure 56. Therefore, Union Pacific's Motion for Summary Judgment (Doc. 42) must be granted.

## CONCLUSION

For the reasons set forth above, Union Pacific's Motion for Summary Judgment (Doc. 42) is **GRANTED**. This action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: June 26, 2024**

> **/s/ Stephen P. McGlynn**
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**